# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

Nos. 00-1069, 00-1393

———————————

Advanced Construction Services, Inc.,    *
       *
   Petitioner/Cross-Respondent,    *
       *    On Petition for Review and
v.    *    Cross-Petition for Enforcement
       *    of an Order of the National
       *    Labor Relations Board.
National Labor Relations Board,    *
       *
   Respondent/Cross-Petitioner.    *

————————

Submitted:  January 10, 2001
Filed:   April 20, 2001

————————

Before RICHARD S. ARNOLD and BOWMAN, Circuit Judges, and KYLE,[1] District Judge.

————————

RICHARD S. ARNOLD, Circuit Judge.

Advanced Construction Services, Inc. (ACS), appeals from a decision of the National Labor Relations Board. The Board held that ACS violated its duty to bargain under 29 U.S.C. §§ 158(a)(1) and (5) by refusing to provide information to Local No. 444 of the United Brotherhood of Carpenters and Joiners of America ("the Local").

---

[1]The Hon. Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

It ordered ACS to provide the information and to post a standard notice informing its employees of their collective-bargaining rights. ACS admits that it would have been required to provide the information in question if it had been requested by the United Brotherhood of Carpenters and Joiners of America ("the International"), with which it had at least two collective-bargaining agreements (CBAs). Because we agree with the Board that the CBAs support a right of inquiry in the Local, we enforce the order.

I.

The following findings of the Administrative Law Judge were adopted by the Board. In mid-1995, the Local's business representative, R.L. Peterson, began trying to persuade a company called Advanced Office Interiors ("Interiors") to recognize the Local for construction jobs within the Local's jurisdiction. Interiors' management declined to do so. In May of 1996, Mr. Peterson received information that Interiors already had a collective-bargaining agreement with the International. When he approached the company again, Interiors manager Richard Jensen told him that the agreement was between the International and AOI, Inc., a different company. Mr. Peterson began to investigate the two companies. He discovered that they had many things in common, including not only the type of service they performed, but also officers, shareholders, board members, and an address of record in Omaha, Nebraska. He further discovered that on June 3, 1996, only a few weeks after his communications with Jensen, AOI, Inc., had changed its name to Advanced Construction Services, Inc.[2] (It is undisputed that Jensen was President of ACS at all times material to this litigation and had also been President of AOI, Inc.) Mr. Peterson took photographs showing that vehicles with vanity license plates bearing the letters "AOI" were parked at the offices

[2]In September of that year, ACS entered into the collective-bargaining agreements with the International under which the Local claims its right of inquiry arises. The ALJ did not make any finding as to when Mr. Peterson learned of this. Before the name change, AOI, Inc., had been party to CBAs with the International.

of both ACS and Interiors, and that the logo of AOI, Inc., ACS's predecessor, was displayed at Interiors' Omaha headquarters. He also obtained Interiors' employee telephone book, which contained numbers for both ACS and Interiors employees.

Mr. Peterson inferred from these discoveries that ACS might be running what is called an "open shop/closed shop" operation, in which an employer uses two corporate identities to get the benefit of both union and non-union labor markets.[3] On the suspicion that Interiors was substantially the same employer as ACS (and therefore subject to the same collective-bargaining obligations), he got in touch with Richard Jensen again, this time by letter. The letter was delivered to Jensen, as President of ACS, at Interiors' Omaha headquarters. Enclosed was a questionnaire seeking information about the relationship between Interiors and ACS. Although Mr. Jensen received the questionnaire, ACS never responded to it.

## II.

"There can be no question of the general obligation of an employer to provide information that is needed by [its employees'] bargaining representative for the proper performance of its duties." N.L.R.B. v. Acme Industrial Co., 385 U.S. 432, 435-36 (1967); see also Brown Shoe Company v. N.L.R.B., 33 F.3d 1019, 1022 (8th Cir. 1994). In applying this general rule to the case at hand, two questions arise: whether the Local was the bargaining representative for ACS's employees, and, if so, whether the requested information was needed for collective-bargaining purposes. We will enforce the Board's order if it correctly applied the law and if its findings are supported

---

[3]The "open shop" refers to an employer that hires without regard to an employee's union status, while the "closed shop" hires in accordance with a union agreement, often through a union-operated hiring facility. The existence or legality of such an operation is not before us.

by substantial evidence in the record.  See <u>New World Communications v. N.L.R.B.</u>, 232 F.3d 943, 945 (8th Cir. 2000).

ACS first argues that the Local is not the employees' bargaining representative because it is not a signatory to the CBAs.  The Board replies that, even so, the CBAs contemplate that local affiliates will act as bargaining representatives.  We agree with the Board.  The main CBA provides in relevant part as follows:

> The Company [i.e., ACS] agrees to recognize the jurisdictional claims of the UBCJA and to comply with the contractual wages, fringe benefits, hours and other working conditions established between the UBCJA affiliates and the employers or recognized employer agencies in the localities in which the company does any work within the jurisdiction of the UBCJA.
>
> *       *       *
>
> The UBCJA agrees to refer personnel to jobs upon a nondiscriminatory basis, such referral to be made upon the request of the Company who retains the right to reject or accept the applicants for employment.  The UBCJA affiliates having jurisdiction in the respective areas of the performance of work will maintain appropriate nondiscriminatory facilities for the registration and referral of personnel possessing the skills required for the performance of work by the Company.  The Company agrees to use said facilities in filling job vacancies on all projects.

JA II 177-78.  The Local is something more than a third-party beneficiary of this agreement.  The agreement imposes upon the Local the duty to maintain a hiring hall for the employer's use.  Moreover, it contemplates that local affiliates will bargain with employers to set the actual terms on which represented employees shall be employed.  The Local has both powers and duties under the contract, and its powers include at least limited representation of employees.

-4-

A second agreement, signed the same day, gives even stronger evidence of the Local's capacity to bargain on behalf of ACS's employees.  It provides that

> Should any dispute or grievance arise under any of the terms of this Agreement, the Employer [i.e., ACS] or his representative and the area (Local Union, District or Provincial Council) union representative shall meet or otherwise be in contact promptly to settle the dispute.

JA II 46.  Only if the Local cannot resolve the dispute on behalf of the employees will the International become involved.  Id. at 46-47. We agree with the Board that, in signing these agreements with the International, ACS agreed to treat local affiliates as bargaining representatives for at least some purposes.

Howell Insulation Co., Inc., 311 N.L.R.B. 1355 (1993), is not to the contrary. In that case, an employer entered into a CBA with an Alabama local affiliate of an international union.  The CBA included an extraterritoriality clause, which provided that the employer would abide by other locals' area agreements when it undertook projects in their jurisdictions.  When a non-union company closely associated with the employer took a job in Tennessee, the Tennessee local filed a grievance, claiming that the non-union company operating in its jurisdiction was substantially the same employer as the signatory to the Alabama local's CBA and was therefore bound by the extraterritoriality clause.  The Board held that, although the Tennessee local was a third-party beneficiary of the Alabama local's CBA, it was not empowered to bargain on behalf of the signatory company's employees and therefore lacked standing to file a grievance.  Here, as we have noted, the Local is more than a third-party beneficiary. The International's agreement not only imposes duties upon the Local but also specifically authorizes local union representatives such as Mr. Peterson to settle disputes arising under the agreement.

The present case also differs from <u>Whisper Soft Mills, Inc. v. N.L.R.B.</u>, 754 F.2d 1381 (9th Cir. 1985). There, the Board had certified the International Ladies Garment Workers Union (ILGWU) as the exclusive statutory bargaining representative of Whisper Soft's production employees. The Pacific-Northwest Council of the ILGWU conducted negotiations with Whisper Soft to resolve disputes that resulted in a strike. Whisper Soft repeatedly made clear its concern that the Council did not represent the ILGWU and stated that it would sign an agreement only with the statutory bargaining representative. The Council, for its part, made clear that the ILGWU did not want to sign an agreement for fear of incurring liability. When Whisper Soft withdrew its recognition of the ILGWU, the Board claimed that Whisper Soft had violated its duty to bargain with the Council. The Ninth Circuit disagreed, stating that the company owed such a duty only to the ILGWU and not to its local affiliate, the Council. <u>Id.</u> at 1385. The <u>Whisper Soft</u> court expressly recognized, however, that even a certified bargaining representative may delegate bargaining authority to "whomever it wants . . .." <u>Id.</u> at 1386. Although there is no issue of statutory certification here, we think that the CBAs in this case would establish such a delegation even if the International were otherwise the exclusive representative of ACS's employees.

III.

The remaining question is whether the information requested was relevant to the performance of the Local's bargaining duties. Under Board precedent, where a bargaining representative seeks information concerning single-employer or alter-ego status, the burden of establishing relevance is on the representative. <u>Shoppers Food Warehouse Corp.</u>, 315 N.L.R.B. 258, 259 (1994). The burden is carried if the union "demonstrates a reasonable belief supported by objective evidence for requesting the information." <u>Id.</u> The standard of relevance is liberal, like the standard used in discovery under the Federal Rules of Civil Procedure. <u>Brown Shoe Co.</u>, 33 F.3d 1019, 1022.

-6-

The ALJ concluded, and the Board agreed, that the Local had a reasonable belief, supported by objective evidence, that ACS and Interiors were alter egos. ACS raises no doubts about that conclusion substantial enough to affect the result. It is true that the ALJ's order could have been worded more accurately. The term "alter egos," in the jargon of labor law, names the relation between an employer and a substantially identical corporate predecessor, where the change in corporate form is attributable to anti-union animus. In contrast, if the companies are operated simultaneously rather than successively, the term "single employer" would generally be used. No anti-union animus need be shown in order to establish that two companies constitute a single employer. See generally Iowa Express Distribution, Inc. v. N.L.R.B., 739 F.2d 1305, 1310 (8th Cir.), cert. denied, 469 U.S. 1088 (1984) (explaining distinction). Here, however, this makes no difference, for the Local does not have the burden of proving either theory in full. All it has to show is that it had good, fact-based reasons for believing that the information requested would help it make "an intelligent appraisal," Acme Industrial Co., 385 U.S. at 438 n.8, of its right to hold Interiors to the terms of ACS's collective-bargaining agreement. The facts Mr. Peterson discovered reasonably support such a belief.

### III.

For the reasons stated, the order of the National Labor Relations Board is enforced.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-